In the Matter of J. S.

No. 9188.

Court of Civil Appeals of Texas, Amarillo.

July 16, 1980.

Day, Owen, Lyle & Voss, Lanny Voss, Plainview, for appellant.

Bob Bass, County Atty., Plainview, for appellee.

COUNTISS, Justice.

This appeal by the minor, J. S., is from a judgment of the juvenile court, waiving its jurisdiction and transferring J. S. to the district court for trial as an adult. Questions presented by this appeal are whether (1) the courtroom identification of J. S. was so tainted that it was inadmissible; (2) there is sufficient evidentiary support for the findings of the juvenile court; (3) the juvenile court abused its discretion in transferring J. S. to the district court; and (4) service of summons on J. S.'s parents was required prior to the transfer hearing. Finding no reversible error, we affirm.

On August 20, 1979, at approximately 6:45 p. m., a convenience store in Plainview, Texas, was robbed by two young males. A store clerk was working at the cash register when the youths entered the store. They were armed with a can of mace and a knife. They jumped over the counter, sprayed the clerk with mace, held the knife to her throat and told her to open the cash register. She did so and they took the money and ran from the store. Two youths were seen running from the store to a vehicle by a witness in a nearby store. The police were summoned, the clerk gave them a description of the youths and the witness gave them · a description of the vehicle.

At approximately 8:30 p. m. on the same day, two youths came to the Plainview po-lice station to arrange the release of a prisoner. A police officer observed that they and their vehicle fit the description given in connection with the convenience store robbery. Another police officer then went to the clerk's residence and brought her to the police station. The patrol car parked beside the suspects' vehicle, in which appellant J. S. was sitting. The clerk immediately identified J. S. as one of the participants in the robbery. J. S. was subsequently taken into custody. He was sixteen years of age at that time.

The clerk observed J. S. and another youth later that evening through a window in the police station, where they were standing with some police officers, and again identified J. S. as one of the participants in the robbery. She was unable to make a positive identification of the other youth, however.

The witness who observed the vehicle leaving the store also came to the police station that evening. He unequivocally identified the vehicle in which J. S. had been sitting as the one he had described to the police earlier.

The state immediately initiated proceedings under section 54.02 of the Texas Family Code [1] requesting the juvenile court to waive jurisdiction and transfer J. S. to the district court for criminal proceedings. The state's motion listed names and addresses for J. S.'s mother and father in Robstown, Texas, and his guardian in Amarillo, Texas. The record reflects issuance of summons for, and service on, the person named as his guardian but does not reflect issuance of summons for or service on, the persons named as his parents.

After the appropriate hearing, the juvenile court waived jurisdiction, transferred J. S. to the district court for criminal proceedings and made findings of fact and conclusions of law. J. S. presents four points of error in this court. He contends the juvenile court erred: (1) in admitting into evi-

1. Hereinafter, all references to sections 54.02 and 53.06 are to Tex.Fam.Code Ann. §§ 53.06, 54.02 (Vernon 1975).

dence the eyewitness identification of him by the store clerk when she testified; (2) because there is insufficient evidentiary support for the juvenile court's reasons for transfer; (3) because the juvenile court abused its discretion in ordering the transfer; and (4) in failing to issue a summons to J. S.'s parents. We will consider the points in the order stated.

J. S. presents a dual attack on the admission of the store clerk's courtroom identification of him. He contends, first, that the identification was not shown to be of independent origin and was tainted by the store clerk's identifications on the night of the arrest. He then contends the identifications on the night of the arrest were made when he was entitled to but did not have counsel and, thus, the subsequent admission of the identification testimony was fundamental error.

█ It is, of course, fundamental that the pre-trial identification procedure not be so unnecessarily suggestive and conducive to irreparable mistaken identification as to amount to a denial of due process. *Proctor v. State*, 465 S.W.2d 759, 765 (Tex.Cr.App. 1971). The factors to be considered when determining the origin of a courtroom identification are:

(1) the prior opportunity to observe the alleged criminal act;

(2) the existence of any discrepancy between any pre-lineup identification and the defendant's actual description;

(3) any identification of another person prior to the lineup;

(4) the identification by picture of the defendant prior to the lineup;

(5) failure to identify the defendant on prior occasions; and

(6) the lapse of time between the alleged act and the lineup identification.

*Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Cr.App.1978).

█ In this case, the offense in question occurred during the late afternoon in a well lighted store. The clerk was face to face with J. S. for several minutes, with ample opportunity to observe him. She testified he sprayed her with mace. She was wearing glasses, however, and her vision was not impaired. The clerk's initial description of J. S. was consistent with his actual appearance and her testimonial description of him. When she was taken to the police station less than two hours after the robbery, she immediately identified J. S. as he sat in his car. There is no evidence of improperly suggestive activity by the police at that time or later. Insofar as the record reflects, the clerk's identification of him has been consistent, and she has never failed to identify him. Also, there is no evidence of any improper use of photographs.

Additionally, at the hearing the clerk testified unequivocally that her identification was based upon her memory of J. S. from the robbery. Based on the foregoing factors, we are satisfied the clerk's courtroom identification was of independent origin and not so tainted by the pre-trial identification procedures employed by the police as to be inadmissible.

██ J. S.'s contention that the courtroom identification was inadmissible because he was not represented by counsel when identified on the night of the robbery is also without merit. As stated in *Banks v. State*, 530 S.W.2d 940, 942 (Tex.Cr.App. 1975):

The presence of counsel is not required until "at or after the initiation of adversary judicial proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

*See also, Ward v. State*, 505 S.W.2d 832, 835 (Tex.Cr.App.1974), *cert. denied*, 419 U.S. 864, 95 S.Ct. 117, 42 L.Ed.2d 100.

Insofar as we can determine from the record, no formal proceedings of any kind had been initiated against J. S. when he was first identified while sitting in his vehicle. Thus, counsel was not required at that time. Even if the right to counsel had arisen when the clerk next observed J. S. inside the police station, we have held that her courtroom identification of J. S. was of independent origin, based on her observa-

tion of him at the time of the robbery, and was untainted by the pre-trial identification procedures. Therefore, no reversible error is present. *Wyatt v. State*, 566 S.W.2d 597, 600 (Tex.Cr.App.1978). The first point of error is overruled.

 In his second point of error, J. S. contends the evidence is insufficient to support the findings of the juvenile court. When reviewing a factual insufficiency point, we are required to consider all of the evidence in order to determine whether the evidence supporting the finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Applying that review standard here, we are satisfied the evidence is sufficient to support the findings of the trial court.

Section 54.02(a) states the substantive elements required for transfer. The juvenile court may transfer if, among other things, it determines after full investigation and hearing that "because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings." In making the determination required by section 54.02(a), the juvenile court is directed by section 54.02(f) to consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

In this case, the juvenile court considered each of the matters set out in section 54.-02(f) and made the following findings of fact relative thereto:

\* \* \* \* \* \*

(3) That the alleged offense committed by the child was against a person.

(4) That the alleged offense committed by the child was committed in an aggressive and premeditated manner.

(5) That there is sufficient evidence on which a grand jury may be expected to return an indictment.

(6) That the child is of sufficient sophistication and maturity for treatment as an adult in the criminal courts.

(7) That the child has no record of previous offenses or referrals for handling as a juvenile.

(8) That the prospect of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services and facilities currently available to the juvenile court are not sufficient to justify the juvenile court retaining jurisdiction.

The juvenile court then concluded "that because of the seriousness of the offense, the welfare of the community requires criminal proceedings. . . ."

 J. S. inferentially admits that his factual insufficiency challenge to findings three, four and five, *supra*, is dependent upon the rejection of the eyewitness identification by the store clerk. Since we have approved the admission of the identification evidence, there is ample evidence to support findings three, four and five. These findings are sufficient to support the conclusion of the juvenile court, regardless of the evidentiary support, or lack thereof, for the remaining findings. *B. R. D. v. State*, 575 S.W.2d 126, 132–33 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *In re C. L. Y.*, 570 S.W.2d 238, 240 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Meza v. State*, 543 S.W.2d 189, 193 (Tex.Civ.App.—Austin 1976, no writ). The juvenile court is not required to find that all of the matters set out in section 54.02(f) have been established in a manner adverse to the child.

Each of the elements must be considered, however, and the reasons for transfer stated so the appellate court may review the basis of the transfer order. *T. P. S. v. State,* 590 S.W.2d 946, 953 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.). The second point of error urged by J. S. is overruled.

In his third point of error, J. S. contends the juvenile court abused its discretion in transferring him to the district court. The substance of his argument is that the trial court considered only the seriousness of the offense without giving proper consideration to the matters listed in section 54.02(f).

Section 54.02(a) states:

(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and

(3) after full investigation and hearing the juvenile court determines that *because of the seriousness of the offense or the background of the child* the welfare of the community requires criminal proceedings (emphasis added).

Assuming the first two requirements of section 54.02(a) have been satisfied, as they have in this case, the statute permits the juvenile court to transfer the child if it concludes that the welfare of the community requires criminal proceedings either because of the seriousness of the offense or the background of the child. *B. R. D. v. State, supra,* at 132. In this case, the juvenile court concluded the seriousness of the crime was the operative factor, precisely as it was permitted to do. Of course, the juvenile court must consider the matters listed in section 54.02(f), discussed in the preceding point, before reaching its conclusion, and it did so in this case. As stated however, it was not required to find that

each of the matters was established in a manner adverse to the child. *T. P. S. v. State, supra,* at 953. We find no abuse of discretion by the juvenile court in ordering the transfer. We overrule J. S.'s third point of error.

In his fourth point of error, J. S. contends the juvenile court erred in failing to serve his parents prior to the transfer hearing and this failure deprived the juvenile court of jurisdiction. Section 53.06, as pertinent here, states:

(a) The juvenile court shall direct issuance of a summons to:

(1) the child named in the petition;

(2) the child's parent, guardian, or custodian;

\* \* \* \* \* \*

The child must be served with a summons and, absent an affirmative showing in the record of service of summons on the child, the juvenile court has no jurisdiction to transfer the child to district court. *Matter of W. L. C.,* 562 S.W.2d 454, 455 (Tex.1978). That requirement was met in this case. The extent to which service is required on the other entities named in section 53.06(a) varies, however, depending on the circumstances of each case. *See, e. g., Carner v. State,* 592 S.W.2d 618, 620 (Tex.Cr.App.1980); *Matter of Honsaker,* 539 S.W.2d 198, 200–01 (Tex.Civ.App.—Dallas 1976, writ ref'd n. r. e.); *In re C. E. H.,* 516 S.W.2d 25, 27 (Tex.Civ.App.—Texarkana 1974, no writ). As stated in *Matter of Honsaker, supra,* at 200–01:

The commentary to § 51.11 explains that a basic principle of the Code is that every child who appears before the juvenile court must have the assistance of some friendly, competent adult who can supply the child with support and guidance.

In this case, the evidence indicates J. S. had not lived with his parents for some time and that he had been living with his sister. Although his parents were never served, his sister was duly served. She appeared at the hearing, was identified in court as his guardian and again identified as his guardian in various post-trial instru-

ments filed by counsel for J. S. In the trial court, there was no objection to, or mention of, the failure to serve the parents.

From these facts, we are satisfied that service on the sister, as the guardian of J. S., was sufficient compliance with section 53.06(a)(2). The purpose of the service provision was met by her notification and appearance at the hearing. Additionally, section 53.06(a)(2) is phrased in the disjunctive, indicating that service on any of the entities named in section 53.06(a)(2) will satisfy that portion of the statute. We, therefore, overrule J. S.'s fourth point of error.

The judgment of the juvenile court is affirmed.